UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>DORIAN BYRD,<br><br>        Defendant. | 20 Cr. 517 (VB) / 23 Cv. 2584<br>21 Cr. 441 (VB) / 23 Cv. 2585 |

**THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO DORIAN BYRD'S MOTION
PURSUANT TO 28 U.S.C. § 2255**

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Nicholas S. Bradley
Assistant United States Attorney
    *-Of Counsel-*

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | Preliminary Statement | | 1 |
| II. | Background | | 1 |
| | A. | Offense Conduct | 1 |
| | B. | Procedural History | 3 |
| | | 1. The Defendant's Guilty Plea | 4 |
| | | 2. The Sentencing Proceeding | 5 |
| III. | Applicable Law | | 6 |
| | A. | Section 2255 Review | 6 |
| | B. | Ineffective Assistance of Counsel | 7 |
| IV. | Discussion | | 8 |
| | A. | Mr. Feldman Was Not Constitutionally Ineffective Because The Defendant Did Not Instruct Him To File a Notice of Appeal | 8 |
| V. | Conclusion | | 12 |

I. **Preliminary Statement**

Defendant Dorian Byrd pleaded guilty in two separate indictments for committing two armed home invasion robberies in Orange County, New York. Specifically, he pleaded guilty to (i) conspiracy to commit Hobbs Act robbery and Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 ("the 20 Cr. 517 Indictment"); and (ii) brandishing a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii), and 2 (the "21 Cr. 441 Indictment"). At sentencing, the defendant received the benefit of a below-Guidelines sentence of 132 months' imprisonment. Additionally, under the plea agreement, the Government agreed to dismiss two firearm brandishing charges that each carried a seven-year mandatory minimum. Proceeding *pro se*, the defendant now seeks to challenge his convictions and sentences under 28 U.S.C. § 2255. On March 30, 2023, the Court directed the Government to respond to the defendant's assertion that his defense counsel did not file a notice of appeal following the defendant's supposed request that one be filed. As explained below, and through the enclosed affidavit of defense counsel Steven Feldman, the defendant's claim is meritless. The Court should deny the motion.

II. **Background**

   A. **Offense Conduct**

This case involves an investigation into a series of organized armed robberies of drug dealers and suspected drug dealers in Orange County, the Bronx, and in Connecticut. (PSR ¶ 37.)[1]

---

[1]   "Mot." refers to the Section 2255 motion (21 Cr. 441, ECF No. 191), and citations to page numbers in the motion refer to the page numbers assigned by CM/ECF; "PSR" refers to the Presentence Investigation Report prepared by the United States Probation Office in connection with the defendant's sentencing.

**The 20 Cr. 517 Indictment – The February 19, 2020 Home Invasion Robbery**

On February 19, 2020, Dorian Byrd, Kareem Grant, Terrance Rose, and others robbed a large-scale marijuana dealer ("Victim-1") at gunpoint at his home in Montgomery, New York. (PSR ¶¶ 23-25.) The defendant and Rose entered Victim-1's house brandishing guns. (PSR ¶ 25.) They restrained Victim-1 and others inside the house with black tape, and stole money and large quantities of marijuana. (*Id.*) The defendant, who was placed on probation in South Carolina just weeks earlier (PSR ¶ 68), agreed to accompany Grant and Rose on a bus to New York the day before the robbery and stay overnight at Grant's house in Middletown, New York. (PSR ¶ 22.) Before traveling to New York to participate in the armed robbery, the defendant searched online for information on acquiring guns and ammunition ("how much is a Kel-Tec"; "where can I get 9mm bullets"). (PSR ¶ 21.)

On the day of the robbery, the defendant and his co-conspirators together violently tased and abducted an individual ("Victim-2") who had been lured to Grant's house under the pretense of picking up money owed for marijuana. (PSR ¶ 23.) The defendant and his co-conspirators then ordered Victim-2 to drive them to Victim-1's house so the defendant and his co-conspirators could identify where Victim-1 lived. (*Id.*) While Grant and another co-conspirator patrolled the street in a second car as a "look-out," the defendant and Rose brought Victim-2 into Victim-1's house. (PSR ¶¶ 24-25.) Once inside, the defendant and Rose, armed with guns, tied up Victim-1, a witness, and Victim-2 while demanding money and valuables. (PSR ¶ 25.) The defendant and Rose stole approximately 12 pounds of marijuana, three hundred marijuana "vape" cartridges, and approximately $20,000 in cash at gunpoint. (*Id.*) The defendant and Rose then unbound Victim-2 and made him carry the robbery proceeds back to the car. (*Id.*)

After leaving Victim-2 in his car at a trailer park in Rockland County, the defendant and his co-conspirators drove to New York City while dividing up the robbery proceeds. (PSR ¶¶ 27-28.) The defendant and Rose then traveled back to South Carolina from a bus terminal in New York City that night. (PSR ¶ 29.)

### The 21 Cr. 441 Indictment – The November 14, 2019 Home Invasion Robbery

Just three months earlier, the defendant traveled from South Carolina to New York to participate in another violent home invasion robbery at a residence in Mount Hope. (PSR ¶ 38.) At the time of the robbery, the defendant was on pretrial release from an open criminal case in South Carolina. (PSR ¶ 68.) On the night of the robbery, the defendant and his co-conspirators (including Darren Lindsay) drove to the Mount Hope residence, which they targeted because they believed the occupants were drug dealers who had a large amount of cocaine inside. (PSR ¶¶ 38-39.) Once at the house, the defendant and a co-conspirator went inside wearing masks and brandishing guns. (PSR ¶ 39.) The residents of the targeted house—who turned out to be an elderly couple and their teenage grandson—were tied up with electrical wires and restrained while the defendant and his co-conspirator ransacked the house for the cocaine. (PSR ¶¶ 40-41.) During the course of the robbery, the elderly couple was violently pistol whipped. (PSR ¶ 40.) When the search for cocaine turned out to be unsuccessful, Byrd and his co-conspirator fled after taking multiple pieces of jewelry belonging to the victims. (PSR ¶ 41.)

**B.     Procedural History**

The defendant was arrested in South Carolina on August 27, 2020 and remanded. (PSR at 1; 20 Cr. 517, ECF No. 10.) On September 30, 2020, a Grand Jury returned the 20 Cr. 517 Indictment charging the defendant with one count of conspiring to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One), one count of Hobbs Act robbery, in violation of 18 U.S.C.

§§ 1951 and 2 (Count Two), and one count of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2 (Count Three). (PSR ¶¶ 1-4.)

On July 14, 2021, the 21 Cr. 441 Indictment was unsealed, charging the defendant with one count of conspiring to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One), one count of committing and threatening violence in furtherance of a plan to commit Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count Two), one count of Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count Four), and two counts of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2 (Counts Three and Five). (PSR ¶¶ 6-11.)

Throughout his criminal proceedings, the defendant was represented by Steven D. Feldman, who was appointed counsel under the Criminal Justice Act.

### 1. The Defendant's Guilty Plea

On September 10, 2021, the defendant pleaded guilty before Judge McCarthy to Counts One and Two of the 20 Cr. 517 Indictment and to Count Three of the 21 Cr. 441 Indictment under a plea agreement with the Government. (PSR ¶ 15.) The parties stipulated to the same offense level calculations under the Guidelines as set forth by the Probation Office in the PSR. (PSR ¶¶ 15, 52-64, 119.) Prior to accepting the guilty plea, Judge McCarthy conducted a thorough plea allocution that complied with Rule 11 of the Federal Rules of Criminal Procedure. (Plea Tr., attached as Exhibit A.) As relevant here, Judge McCarthy reviewed the appellate waiver in the plea agreement (attached as Exhibit B) with the defendant and confirmed that he understood it. (Plea Tr. at 23:11-24:17.) Judge McCarthy also confirmed with the defendant that he reviewed the plea agreement with his attorney, that he fully understood its contents, did not have any questions about the plea agreement, and was satisfied with his attorney's representation of him. (*Id.* at 12:2-4, 12:11-13:15.)

On September 16, 2021, this Court entered an order accepting the defendant's guilty plea. (21 Cr. 441, ECF No. 50.)

### 2. The Sentencing Proceeding

The Court sentenced the defendant on January 3, 2022 in a proceeding that complied with Rule 32 of the Federal Rules of Criminal Procedure. (Sentencing Tr., 21 Cr. 441, ECF No. 108.)

At the sentencing hearing, the Court summarized the Guidelines calculation in the PSR, which was consistent with the Guidelines stipulation in the plea agreement. (*Id.* at 4:9-6:20.) For the 20 Cr. 517 Indictment, these calculations included a base offense level of 20, U.S.S.G. § 2B3.1(a); a five-level enhancement because a firearm was brandished, U.S.S.G. § 2B3.1(b)(2)(C); a two-level enhancement because a victim sustained bodily injury, U.S.S.G. § 2B3.1(b)(3)(A); a four-level enhancement because a person was abducted to facilitate the commission of the offense, U.S.S.G. § 2B3.1(b)(4)(A); and a one-level enhancement because a controlled substance was taken, U.S.S.G. § 2B3.1(b)(6). (*Id.*) After accounting for acceptance of responsibility under U.S.S.G. § 3E1.1, the final offense level on the 20 Cr. 517 Indictment was 29. (*Id.*) At Criminal History Category III (based on four criminal history points), the Guidelines range on the 20 Cr. 517 Indictment was 108 to 135 months' imprisonment. (*Id.*) As for the 21 Cr. 441 Indictment, the Guidelines range was the mandatory minimum 84-month consecutive term of imprisonment under U.S.S.G. § 2K2.4, resulting in an effective Guidelines range across both indictments of 192 to 219 months' imprisonment. (*Id.*) The defendant did not object to the facts in the PSR, which the Court adopted as its findings of fact for sentencing. (*Id.* at 5:18-6:2.)

After hearing argument from the parties on an appropriate sentence, and allowing the defendant to address the Court, the Court sentenced the defendant to a below-Guidelines sentence of 132 months' imprisonment—specifically, 48 months' imprisonment on the 20 Cr. 517 Indictment and a mandatory consecutive 84 months' imprisonment on the 21 Cr. 441 Indictment. (*Id.* at 29:7-

43:2.) The Court also advised the defendant of his right to appeal his sentence subject to any limitations contained in his plea agreement; that a notice of appeal must be filed within 14 days of the entry of judgment; and that if he decided to appeal he needed to advise his attorney immediately (or the clerk would prepare and file a notice of appeal on his behalf). (*Id.* at 48:19-49:7.)

Judgment against the defendant was entered under both dockets on January 4, 2022. The defendant did not file a direct appeal. The defendant filed his motion under 28 U.S.C. § 2255 on March 27, 2023. (21 Cr. 441, ECF No. 191.) The Court issued an order on March 30, 2023 requiring the Government to file a response regarding the defendant's assertion that his defense counsel did not file a notice of appeal following his supposed request that one be filed. (21 Cr. 441 ECF No. 192.)

### III.     Applicable Law

#### A.     Section 2255 Review

Under Section 2255, a prisoner who is in custody serving a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds that it was "imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To obtain relief, the petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000).

Generally, habeas review, "an extraordinary remedy," is not a substitute for direct appeal. *Bousley v. United States*, 523 U.S. 614, 621-22 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a Section 2255 motion] only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'"). But ineffective-assistance-of-counsel claims are an exception to this

general rule, and failure to raise such claims on direct appeal is not a bar to bringing them in "a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003).

Where a Section 2255 motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the Court need not grant a hearing to determine the issues and to make findings of fact and conclusions of law. 28 U.S.C. § 2255(b); *see also Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009).

In addition, because the defendant has filed his habeas motion *pro se*, it should be construed liberally, and interpreted to raise the strongest arguments that it suggests. *E.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

### B.     Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel fails unless a defendant (i) overcomes a "strong presumption" that his counsel's conduct was reasonable, and shows that his representation "fell below an objective standard of reasonableness" under "prevailing professional norms"; and (ii) "affirmatively prove[s] prejudice," that is, shows that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 693-94 (1984); *accord, e.g.*, *United States v. De La Pava*, 268 F.3d 157, 163 (2d Cir. 2001). The defendant bears the burden of establishing both elements. *Strickland*, 466 U.S. at 687.

Under the first *Strickland* prong, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (internal quotations omitted). A defendant cannot prevail on an ineffective assistance claim merely because he believes that his counsel's strategy was inadequate. *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986). Further, a defense

7

counsel's "failure to make a meritless argument does not rise to the level of ineffective assistance, and strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (internal citations omitted).

Under the second prong, the defendant bears the "heavy burden" of showing "actual prejudice." *Strickland*, 466 U.S. at 692. To show prejudice, the defendant must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693-94. It is not enough to show "some conceivable effect" on the result: "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. In the context of a guilty plea, *Strickland*'s second prong requires the defendant to demonstrate that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Only where the defendant meets his burden under both prongs of *Strickland* can the Court conclude that the defense attorney "was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

**IV.    Discussion**

    **A.    Mr. Feldman Was Not Constitutionally Ineffective Because The Defendant Did Not Instruct Him To File a Notice of Appeal**

The Second Circuit has held that "a lawyer who disregards a defendant's specific instruction to file a notice of appeal acts in a manner that is professionally unreasonable." *Campusano v. United States*, 442 F.3d 770, 773 (2d Cir. 2006). The burden to demonstrate that the defendant *specifically instructed* his counsel to file a notice of appeal rests on the defendant. *See, e.g., Kajtazi v. United States*, 16 Cr. 289 (ALC), 2018 WL 3962932, at *3 (S.D.N.Y. Aug. 17, 2018) ("Kajtazi has not demonstrated that he specifically instructed [defense counsel] to file a notice of appeal.").

The defendant has not met that burden. His motion baldly asserts that, "[o]n the day of sentencing, the petitioner instructed his lawyer to file a[] direct appeal for him because he believed his sentence was unreasonable." (Mot. at 5.) The defendant further claims that Mr. Feldman "told him not to worry and that[] he was totally correct about his sentence being unreasonable and his attorney promised him he would file a direct appeal for him." (*Id.*) These claims are contradicted by an affidavit submitted by Mr. Feldman ("Feldman Affidavit," attached as Exhibit C). Specifically, Mr. Feldman explained that the defendant did not direct him to file a notice of appeal on the day of his sentencing, or at any point afterward. (Feldman Affidavit ¶ 8.) Nor did Mr. Feldman tell the defendant that his substantially below-Guidelines sentence was "unreasonable." (*Id.*) And the defendant did not call Mr. Feldman's office the week of his sentencing to direct or confirm the filing of any notice of appeal. (*Id.*)

Mr. Feldman's affidavit also describes how his contemporaneous recordkeeping fatally undermines the defendant's claims. Specifically, Mr. Feldman sent a letter to the defendant on January 4, 2022 that confirmed in writing that the defendant did not want to file an appeal, which was based on Mr. Feldman's direct conversations with the defendant. (*Id.* ¶ 9.) In that letter, Mr. Feldman instructed the defendant that if he changed his mind and wished to file a notice of appeal, then he should notify Mr. Feldman immediately. (*Id.*) The defendant did not do so. (*Id.*)

Against that backdrop, the defendant's self-serving claims over a year later make no sense. It beggars belief that the defendant would supposedly direct the filing of a notice of appeal and then wait over a year with apparently no attorney contact before "calling the Clerk of Court in February 2023" to inquire about his appeal. (Mot. at 5.) This Court has correctly found under similar circumstances that the extended passage of time after sentencing—here, thirteen months—

9

corroborates defense counsel's credible assertion that he was not asked to file a notice of appeal. *Guerrero v. United States*, 14 Cr. 768 (VB), 2021 WL 3172985, at *5 (S.D.N.Y. July 27, 2021) (explaining that the "lengthy delay [of 15 months after sentencing] supports the conclusion that Guerrero never actually requested that counsel file an appeal") (citing *Roberts v. United States*, 2014 WL 4199691, at *5 (E.D.N.Y. Aug. 22, 2014) (dismissing claim attorney did not file appeal as instructed when petitioner waited thirteen months before filing habeas petition)). As in *Guerrero*, the defendant was also specifically advised that a notice of appeal had to be filed within fourteen days of judgment and that, at his request, the clerk would prepare and file a notice of appeal on his behalf. *Id.*; (Sentencing Tr. 48:19-49:7.) Instead, the defendant, as in *Guerrero*, "never made any efforts in that regard, and, indeed, did not raise the issue of his desire to file an appeal until nearly fifteen months later." *Guerrero*, 2021 WL 3172985, at *5 (finding that defendant's "'highly self-serving and improbable assertions' are contradicted by [defense counsel's] credible declaration and the record of the sentencing proceeding") (internal citations omitted).

On this record, then, the Court can determine that the defendant's motion must fail. *See, e.g.*, *Kajtazi*, 2018 WL 3962932, at *4 (evidentiary hearing not required if attorney affidavit is "detailed" and "conclusively show[s]" defendant did not make a specific request, in contrast to petitioner's "self-serving allegations"); *Guerrero*, 2021 WL 3172985, at *4 ("When an attorney's affidavit credibly contradicts a habeas petitioner's ineffective assistance of counsel claim, the Court is entitled to deny the petition without holding an evidentiary hearing.") (internal citation omitted); *see also Padin v. United States*, 521 F. App'x 36, 38 (2d Cir. 2013) (upholding district court's refusal to hold an evidentiary hearing based on affidavits, plea, sentencing transcripts, and observations of counsel); *Dedushaj* v. *Graham*, 07 Civ. 5401, 2008 WL 4858242, at *2 (S.D.N.Y. Nov. 7, 2008) ("Self-serving conclusory allegations . . . are insufficient to establish ineffective

assistance of counsel."); *Davison* v. *United States*, 97 Cr. 490 (LAP), 2001 WL 883122, at *8 (S.D.N.Y. Aug. 3, 2001) ("[B]lanket assertions against . . . trial counsel's performance in a self-serving affidavit," in the absence of objective evidence to support petitioner's claim, were insufficient).[2]

In summary, the defendant has failed to demonstrate ineffective assistance of counsel. Far from deficient, Mr. Feldman provided the defendant with substantial benefits through his representation. As part of the plea agreement that Mr. Feldman negotiated on behalf of his client, the Government agreed to dismiss two Section 924(c) counts at sentencing that each carried a seven-year mandatory minimum consecutive sentence. Mr. Feldman also vigorously advocated for his client at sentencing, and the Court imposed a sentence it described as a "large variance" that was "five years below the bottom of the [Guidelines] range." (Sentencing Tr. 42:13-18.)

---

[2] The Government also notes that any appeal filed by the defendant would have been, and would now be, frivolous. He knowingly and voluntarily waived any appeal in the plea agreement of a sentence below the applicable Guidelines range, which he received. *See, e.g., United States v. Djelevic*, 161 F.3d 104 (2d Cir. 1998) (holding that appeal of sentence under section 2255 was foreclosed by plea agreement where district court imposed a sentence within the range stipulated by the agreement). Indeed, "[a] rational defendant . . . would not want to file an appeal" where his sentence was "bargained for as part of the plea agreement" and "significantly lower" than the mandatory minimum sentence initially charged. *Kajtazi*, 2018 WL 3962932, at *4.

**V.      Conclusion**

      Accordingly, the Court should deny the defendant's motion without a hearing.

Dated:    White Plains, New York
             May 30, 2023

                                          Respectfully submitted,

                                          DAMIAN WILLIAMS
                                          United States Attorney
                                          Southern District of New York

                         By:       /s/ Nicholas S. Bradley
                                          Nicholas S. Bradley
                                          Assistant United States Attorney
                                          (212) 637-1581

Enclosures:

Exhibit A (Plea Transcript)
Exhibit B (Plea Agreement)
Exhibit C (Affidavit of Steven D. Feldman)

**AFFIRMATION OF SERVICE**

I, Nicholas S. Bradley, affirm under penalty of perjury as follows:

1. I am an Assistant United States Attorney in the Southern District of New York.

2. On May 30, 2023, I caused a copy of the foregoing to be served on petitioner Dorian Byrd via U.S. mail at the following address:

> Dorian Byrd (06420-509)
> FCI BECKLEY
> FEDERAL CORRECTIONAL INSTITUTION
> P.O. BOX 350
> GENERAL & LEGAL MAIL
> BEAVER, WV  25813

Dated: May 30, 2023
White Plains, NY

Nicholas S. Bradley
Assistant United States Attorney